IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARGYLE SYSTEMS INC., | ) | |
| | ) | Case No. 1:21-cv-00016-EGS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**INTERNAL REVENUE SERVICE'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

The Supreme Court has long recognized that the basic purpose of the Freedom of

Information Act ("FOIA") is "a means for citizens to know what their government is up to." *Nat'l*

*Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (internal citations and quotation

marks omitted). Argyle Systems Inc.'s ("Argyle") FOIA request seeks release of all Forms 8655 (a

form allowing a taxpayer to designate an individual to file returns and make tax deposits on the

taxpayer's behalf) and reports that contain information gleaned from those forms. Argyle's FOIA

request does not shed light what the government is up to. Instead, it seeks to know what the

American taxpayer and their representatives are up to. The FOIA exemption 3 in conjunction with

26 U.S.C. § 6103(a) prohibits disclosing third party return information and FOIA exemption 6

prevents the unwarranted invasion of private information of the taxpayers and of their

representatives.

1

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................................ 4

I.    The statutory and decisional law freed the Service from the requirement to perform a "foreseeable harm" analysis because it withholds the records under FOIA exemption 3. ............. 5

II.   The IRS is properly withholding records in full under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103(a). ......................................................................................................... 6

    *A.    "Returns" and "return information" are two separate, statutorily-defined categories of information protected by section 6103.* ............................................................................ 7

    *B.    The concept of "immediate source" as it pertains to section 6103 refers to information that was already public before the IRS came into control of the information and not applicable to the resolution of the issue before the Court.* ....................................................... 11

    *C.    Reporting Agent Lists submitted by a Reporting Agent are protected from disclosure under FOIA exemption 3 because they are "return information."* .......................................... 12

    *D.    Return information is not reasonably segregable.* ......................................................... 15

III.  Records disclosing RAs' information and the information related to the taxpayers' on whose behalf they are authorized to act is protected under FOIA exemption 6 because disclosure would result in an unwarranted invasion of personal information the exemption protects. ......... 16

CONCLUSION ........................................................................................................................... 17

CERTIFICATE OF SERVICE .................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Church of Scientology v. IRS*, 484 U.S. 9 (1987) ................................................................... 8, 13, 15

*Elec. Priv. Info. Ctr. ("EPIC") v. IRS*, 910 F.3d 1232 (D.C. Cir. 2018) ........................................... 7

*In re United States v. NorCal Tea Party Patriots, et al.*, 817 F.3d 953 (2016) ............................ 7, 8

*Jud. Watch v. S.S.A.*, 799 F. Supp. 2d 91 (D.D.C. 2011) ................................................................ 13

*Kwoka v. IRS*, 989 F.3d 1058 (D.C. Cir. 2021) .................................................................................. 6

*Landmark Legal Found. v. IRS*, 267 F.3d 1132 (D.C. Cir. 2001) .................................. 7, 8, 9, 10, 16

*Mallas v. United States*, 993 F.2d 1111 (4th Cir. 1993) ................................................................. 11

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ................................................... 1

*Reps. Comm. for Freedom of the Press v. FBI*, No. 20-5091, 2021 WL 2753938
    (D.C. Cir. July 2, 2021) ............................................................................................................. 5, 6

*Rice v. United States*, 166 F.3d 1088 (10th Cir. 1999) .............................................................. 11, 12

*Rosenburg v. U.S. Dep't. of Def.*, 342 F. Supp. 3d 62 (D.D.C. 2018) ................................................ 5

*Ryan v. Bureau of A.T.F.*, 715 F.2d 644 (D.C. Cir. 1983) ..................................................... 12, 13, 14

*Tax Analyst v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) .......................................................................... 9

*Thomas v. United States,* 890 F.2d 18 (7th Cir. 1989) ............................................................... 11, 12

*Wilkins v. Jackson*, 750 F. Supp. 2d 160 (D.D.C. 2010) ................................................................... 4

**Statutes**

26 U.S.C. § 6103 ....................................................................................................................... passim

5 U.S.C. § 552(a) ............................................................................................................................... 5

5 U.S.C. § 552(b) ............................................................................................................................... 6

**ARGUMENT**

The Internal Revenue Service ("IRS" or "Service") demonstrated that Argyle's FOIA request is unduly burdensome and overly broad on its face because it would result in millions of pages of responsive records. Dkt. No. 16-2 at p. 14. Argyle's opposition fails to address this argument and has therefore conceded it. *See Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded.") (citations omitted). The Court should grant summary judgment for the IRS on this concession alone.[1]

The records Argyle seeks are exempt from disclosure for two reasons. First, Argyle seeks records which are categorically exempt from disclosure under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103 because the FOIA request seeks return information. Dkt. No. 16-2 at pp. 6-11. Second, the records Argyle seeks are properly withheld in part under FOIA exemption 6 because the records contain sensitive information about individuals other than Argyle, including the personal information of designated registered agent information and personal information of third parties. *Id*. at pp. 11-12. Argyle's claim that the IRS failed to perform a foreseeable harm analysis under the FOIA Improvement Act of 2016 for the records withheld under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103 is legally faulty. The FOIA does not require an agency to balance the foreseeable harm for records withheld under FOIA exemption 3. Argyle also ignores controlling D.C. Circuit case law that fully exempts the types of records Argyle seeks under the FOIA. The Court should reject Argyle's baseless arguments and grant summary judgment for the IRS.

---

[1] Argyle does not challenge the adequacy of the search for records related to item 3 of its FOIA request. That issue is, likewise, conceded.

I.     **The statutory and decisional law freed the Service from the requirement to perform a "foreseeable harm" analysis because it withholds the records under FOIA exemption 3.**

Argyle argues that the IRS has failed to meet its burden for withholding records because the IRS did not perform the "foreseeable harm" analysis codified by the FOIA Improvement Act of 2016, and argues that the "IRS does not account for *Reps. Comm. for Freedom of the Press v. FBI*, No. 20-5091, 2021 WL 2753938 (D.C. Cir. July 2, 2021)." Dkt. No. 17 at p. 6. Argyle misunderstands both the 2016 FOIA amendment and the recently decided D.C. Circuit opinion in *Reps. Comm. for Freedom of the Press*. The records at issue are protected from disclosure under 26 U.S.C. § 6103 in conjunction with FOIA exemption 3 and are therefore not subject to the "foreseeable harm" analysis as a matter of law.

The FOIA Improvement Act of 2016 amended the FOIA to include the requirement that "an agency shall withhold information only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . **or disclosure is prohibited by law**."  5 U.S.C. § 552(a)(8)(A)(i) (emphasis added). The statute continues: "Nothing in this paragraph requires disclosure of information that is **otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3).**" 5 U.S.C. § 552(a)(8)(B) (emphasis added). In other words, Congress' codification of the "foreseeable harm" requirement in 2016 only applies to discretionary FOIA exemptions and not to mandatory FOIA exemptions, i.e, exemption 3. FOIA exemption 3 precludes agencies disclosing records that non-FOIA disclosure law prohibits disclosing. *See Rosenburg v. U.S. Dep't. of Def.*, 342 F. Supp. 3d 62, 73 n.1 (D.D.C. 2018) ("Critically, '[t]he foreseeable harm standard applies only to those FOIA exemptions under which discretionary disclosures can be made.' Information that is prohibited from disclosure or exempt

from disclosure by law 'is not subject to discretionary disclosure and is therefore not subject to the foreseeable harm standard.'") (citing S. Rep. No. 114-4, at 8).

Argyle's reliance on *Reps. Comm. for Freedom of the Press* is misplaced because the records in that case were withheld under FOIA exemption (b)(5), which is a discretionary exemption. *See Reps Comm. For Freedom of the Press*, 2021 WL 2753938, at *1. Section 6103 is a statute that qualifies for protection under FOIA exemption (b)(3). *See Kwoka v. IRS*, 989 F.3d 1058, 1062 (D.C. Cir. 2021). Section 6103 prohibits disclosing the records here and, therefore, the FOIA Improvement Act of 2016 specifically spares those records from any "foreseeable harm" analysis.

## II.   The IRS is properly withholding records in full under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103(a).

The IRS's opening brief showed that it is properly withholding records in full under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103(a) because the records Argyle seeks constitute "return information" as statutorily defined by 26 U.S.C. § 6103(b)(2)(A). Argyle argues that the information it seeks is not "return" or "return information" based on its clear misunderstanding of 26 U.S.C. § 6103 (hereinafter referred to as "section 6103"), ignoring controlling DC Circuit precedent, and relying in inapplicable out-of-circuit case law. The Court should reject Argyle's flawed analysis of the nondisclosure requirements under section 6103 and grant summary judgment for the IRS.

Argyle's section 6103 discussion conflates "return" and "return information." Argyle contends that if Form 8655 is not a "return" it cannot be (or contain) "return information." Dkt. No. 17 at pp. 9-21. After improperly collapsing these two distinct items of statutorily-protected information into one, Argyle cites a Sixth Circuit opinion in attempting to support its defective

position that Form 8655 is not protected by section 6103 without citing the seminal D.C. Circuit *Landmark Legal Foundation* opinion that directly controls this case. Finally, Argyle tries to support its argument by relying on a concept inapplicable to the one at bar: that return information is determined by the "immediate source" of the information. The IRS will unpack Argyle's flawed section 6103 analysis one concept at a time in the next sections.

A.     *"Returns" and "return information" are two separate, statutorily-defined categories of information protected by section 6103.*

The general rule of section 6103 is that "returns **and** return information shall be confidential . . ." 26 U.S.C. § 6103(a) (emphasis added). "Returns" and "return information" are separate, statutorily-defined terms that consist of two categories of records that must not be disclosed. *See Elec. Priv. Info. Ctr. ("EPIC") v. IRS*, 910 F.3d 1232, 1240-41 (D.C. Cir. 2018) (explaining that section 6103 bars two distinct categories of records: "returns" and "return information"). The IRS argues that Forms 8655 are exempt from disclosure because they fall into the second category of records, specifically "return information" as defined by 26 U.S.C. § 6103(b). Accordingly, Argyle's argument that Form 8655 is exempt under the first category of "returns" is factually and legally inapplicable. This case concerns records consisting only of the "return information" category, specifically, the Form 8655 and records derived from that form.

Argyle's argument ignores the controlling authority in the D.C. Circuit in *Landmark Legal Found. v. IRS*, 267 F.3d 1132 (D.C. Cir. 2001). Instead, Argyle asks this Court to adopt a Sixth Circuit decision holding that names on applications for tax-exempt status submitted to the IRS are not return information. *See In re United States v. NorCal Tea Party Patriots, et al.*, 817 F.3d 953 (2016).  Argyle argues, based upon *Norcal*, that the information contained on Form 8655 is not "return information" because it is not captured on a "return." Dkt. No. 17 at p. 14.  The Sixth

Circuit in *NorCal* expressly considered the D.C. Circuit's holding in *Landmark* but ultimately decided that it was unpersuaded by the case, deciding that names contained on an application for tax-exempt status did not constitute "return information" because the information is captured on an application and not on a "return." *NorCal*, 817 F.3d at 965.  The Court should reject Argyle's invitation to ignore the *Landmark* case because it is based on faulty reasoning. The court in *NorCal* incorrectly assumed that a "'taxpayer's identity' includes only names on a *return*, not on an application." *Id.* However, reading section 6103 as including only names on a return would result in any person's[2] taxpayer identity subject to disclosure under the FOIA if it were not included on their own tax return. Under that reading of the statute, any person could request non-return applications or tax filings and argue that the information and identity of the taxpayer was not protected under section 6103. That untenable reasoning and result is inconsistent with the rulings and rationales of the Supreme Court in the *Church of Scientology* case and of the D.C. Circuit in the *Landmark* case.

The Supreme Court in *Church of Scientology* made clear that a "return" and "return information" were two distinct categories. *See Church of Scientology v. IRS*, 484 U.S. 9, 11-12 (1987)). The Supreme Court further identified that if any record constituted "return information," it would be impossible to redact or otherwise remove identifiers and that the record was protected from disclosure under section 6103. *Id.* at 18.  In fact, "[o]ne of the major purposes in revising § 6103 was to tighten the restriction on the use of return information by entities other than [the IRS]. *Id.* at 16 (citing S. Rep. No. 94-938, p. 318 (1976)). The Supreme Court held that "making all

---

[2] The Internal Revenue Code defines person.  "The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.  See 26 U.S.C. § 7701(a)(1).

nonidentifying return information eligible for disclosure would . . . undercut the legislation's

primary purpose of limiting access to tax filings." *Id.* at 16

The controlling *Landmark* decision holds that third-party identities and their

communications with the IRS is protected "return information" based on the D.C. Circuit's ruling

that the definition of "return information" was meant to be broadly construed. *Landmark*, 267 F.3d

at 1137-38. The holding in *Landmark* has two distinct lines of legal reasoning interpreting what

type of information falls under the statutory definition of "return information" in section 6103(b).

First, *Landmark* held that third-party identities and their communications with the IRS is

protected "return information because the statutory definition is 'deliberately sweeping' in that [i]t

appears to take no interest in the Secretary's actual *use* of the material." *Landmark*, 267 F.3d at

1136 (emphasis in the original). Holding that "return information" is not merely limited to its use

related to a return, the D.C. Circuit reasoned that "we would have to excise the words 'received by'

and 'furnished to,' and to disregard the extremely general character of the connecting phrase—

'with respect to'" to reach a contrary result. *Id*. The court held that third-party identities, through

their communications with the IRS, consisted of "return information" and were thereby exempt

from disclosure no matter if the information received directly relates to a filed return. *Id*.

Second, *Landmark* held that third-party return identities and the third-parties'

communications with the IRS is protected "return information" because it is "other data" as used in

the statutory definition of "return information." The D.C. Circuit relied on the dictionary definition

of "datum" meaning "detailed information of any kind," and its prior holding in *Tax Analyst v. IRS*,

117 F.3d 607 (D.C. Cir. 1997) where it distinguished between "factual" and "legal" matters,

observing that each of the specific items listed in the beginning of the statutory definition of "return

information" in section 6103(b)(2)(A) are factual. *Landmark*, 267 F.3d at 1136. The D.C. Circuit

reasoned:

> [T]he catch-all phrase at the end is "*other* data," suggesting that Congress regarded all the preceding items [contained in the section 6103(b)(2)(A)], including the taxpayer's identity, as data. A third-party complainer's identity seems no less so. Presumably a statement of a "taxpayer's identity" communicates the factual proposition that someone's name is in the IRS files in connection with that person's payment or non-payment of taxes. Similarly, revelation of any third-party complainer "identity" expresses the factual proposition that the person identified has communicated with the IRS about the status of a taxpayer or potential taxpayer.

*Id*. The D.C. Circuit's holding and reasoning in *Landmark* makes clear that the statutory definition

of return information is broad, and its closing note in the opinion reconfirms its rationale:

> In closing we note Landmark's argument that the statute protects only "return information," and thus can cover only information that relates to an actual tax return. But this rather wistful point disregards the actual statutory definition, which plainly reaches far beyond what the phrase "return information" would normally conjure up.

*Id*. at 1138. Here, Argyle is making the same argument rejected by the D.C. Circuit.

Consistent with *Landmark*, Form 8655 constitutes "return information." The form furnished

to, and gathered by, the IRS, collects the factual data (identity of the taxpayer, identity of the

Reporting Agent ("RA") authorized to file or make payments on behalf of the taxpayer, their

identifying numbers, address, etc.).  Moreover, Form 8655 designates by name that the registered

agent can file or remit tax deposits related to the specific tax return checked on face of the form

(*e.g.*, Forms 940, 941, etc.). *See* Dkt. No. 16-006 (Blank Form 8655). The designation of an RA to

sign certain tax returns on behalf of a taxpayer reflects the nature of the tax. For example, by

checking the box next to "940" on the Form 8655, the RA would be responsible for reporting the

taxpayer's annual federal unemployment (FUTA) tax return, which is also known as the "IRS Form

940." On its face, the form indicates what type(s) of tax(es) the taxpayer is responsible for paying

over to the IRS. Thus, a taxpayer furnishes this data to the IRS to help the taxpayer file and pay tax

deposits "with respect to the determination of the existence or possible existence, of liability." 26 U.S.C. § 6103(b)(2)(A).

B.      The concept of "immediate source" as it pertains to section 6103 refers to information that was already public before the IRS came into control of the information and not applicable to the resolution of the issue before the Court.

Argyle contends that the definition of return information applies only when the "immediate source" of the information is from a return or some internal document based on a return. Dkt. No. 17 at p. 13. Argyle cites opinions from the Seventh and Tenth Circuits in an attempt to support this defective conclusion. *Id*. Argyle takes those non-binding opinions out of context and the holdings are inapplicable here.

The concept of "source information" in the cases that Argyle cites refer to whether the IRS may disclose either "return" or "return information" that has already become a matter of public record in connection with tax administration. For example, the first case Argyle cites is a Seventh Circuit case, *Thomas v. United States*, in which the IRS issued a press release that contained information about a taxpayer's tax liability drawn from a Tax Court opinion. *See* 890 F.2d 18, 19 (7th Cir. 1989). The Court held that the IRS did not violate the non-disclosure mandate of section 6103 when it released a press release containing information that otherwise could be return information but became part of the public dominion as part of a Tax Court opinion. *Id*. at 20. Argyle also cites a Tenth Circuit opinion adopting the same principle as the Seventh Circuit. *See Rice v. United States*, 166 F.3d 1088, 1091 (10th Cir. 1999) (press release issued based on public affairs officer's attendance at trial, and not on IRS documents, was not an unauthorized disclosure). There is a circuit split, with no controlling D.C. authority, as to whether this type of disclosure violates section 6103. *See Mallas v. United States*, 993 F.2d 1111, 1120-21 (4th Cir. 1993) (holding

that even if a revenue agent's reports repeated information otherwise available to the public, they still fell within the broad definition of return information).

The Court need not concern itself with resolving the circuit split here because the immediate or public source legal concept is inapplicable to the issue at bar. Unlike the *Thomas* case involving information the IRS made available in a press release about a court opinion, the records Argyle seeks do not contain information that is already available in the public domain. Argyle seeks Form 8655, documents filed with the Forms 8655, and reports the IRS generated containing information derived from the Forms 8655 confidentially submitted to assist a taxpayer in filing returns and making tax deposits. Argyle's reliance on the *Thomas* and *Rice* lines of cases is misplaced.

C.   *Reporting Agent Lists submitted by a Reporting Agent are protected from disclosure under FOIA exemption 3 because they are "return information."*

Item 2 of Argyle's FOIA request seeks Reporting Agent Lists ("RALs"). Dkt. No. 16-1 ¶¶ 8, 24. RALS are submitted by the Reporting Agent ("RA") and identify taxpayers for whom an RA will perform authorized services. *Id*. ¶ 24. An RAL typically contains the Forms 8655 of an RA and it will typically contain the name and address of the RA, the RA's EIN, list type (additions or deletions), name and phone number of the RA's contact person, client account number (optional), and names and EINs of taxpayers. *Id*. ¶¶ 25-26. Argyle argues that RALs are not protected "return information" because they are submitted by the RA rather than by the taxpayer. Dkt. No. 17 at p. 15. Argyle mistakenly claims that its position is supported by a 1983 holding in *Ryan v. Bureau of A.T.F. Id*. Argyle is wrong.

In *Ryan*, a FOIA requester was seeking from the Bureau of Alcohol, Tobacco, and Firearms "the current list of liquor bottle manufacturers who have filed a notice of intent to engage in the manufacture of domestic liquor bottles on Form 4328 under 27 C.F.R. § 173.32." *Ryan v. Bureau of*

*A.T.F.*, 715 F.2d 644, 645 (D.C. Cir. 1983). The Form 4328 required, "in addition to the statement of intent to manufacture, the name and address of the filer, the location of the manufacturing premises, and the materials to be used." *Id.* The D.C. Circuit's holding had two parts: (1) although the manufacturers did not have to pay any liquor excise taxes, the form, which was designed to provide information for protection of revenue, was "information return" for purposes of the statute providing that returns and return information were to be confidential, and therefore exempt under the FOIA; and (2) the word "taxpayer," within the statute stating that the term "return information" does not include data in a form which cannot be associated with, or otherwise identify, a particular taxpayer. *Id*. at 646-47. Argyle has misconstrued the second part of the holding as interpreting that it stands for the position that unless the information is submitted by the taxpayer, it is not protected return information. The *Ryan* court, however, was merely interpreting the flush language following the definition of "return information" in section 6103(b)(2)(A) that allows the IRS to disclose non-identifying, statistical information.

The flush language that follows section 6103(b)(2)(A) provides that the definition of return information "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." "Known as the Haskell Amendment, this provision allows the IRS to 'release for research purposes statistical studies and compilations of data, such as the tax model, which do not identify individual taxpayers.'" *Jud. Watch v. S.S.A.*, 799 F. Supp. 2d 91, 94 (D.D.C. 2011) (citing *Church of Scientology*, 484 U.S. at16). The Haskell Amendment only applies to information that has been "reformulated" into "a statistical study or some other composite product." *Id*. "Thus, the Haskell Amendment does not apply to information that an agency simply transfers from one document to another." *Id.*

In fact, this case provides a clear example of how the Haskell Amendment works. Item 3 of Argyle's FOIA request seeks "RAF Snapshot Reports."  Dkt. No. 16-1 ¶¶  8, 13. These reports do not contain "return" or "return information" because they do not contain identifying information but are solely statistical information revealing the number of taxpayers who have designated a RA during a time period. *Id*. ¶¶ 14, 50, 54. Accordingly, the IRS released those reports in full to Argyle. *Id*. ¶ 15. The IRS could not release the remaining records because they contain information that can be directly associated with a taxpayer. *See generally id.* The IRS is therefore withholding the remaining records because they contain "return information" and nothing in the *Ryan* Court's holding conflicts with that position.

The plain reading of section 6103 does not support Argyle's position that only information submitted by the taxpayer is "return information." Section 6103(b)(2)(A) protects return information that is ". . . received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." The statutory definition does not distinguish how the information came into the hands of the IRS – only that the information is in the hands of the IRS.[3]

---

[3] Incidentally, "return information" actually received by the taxpayer or the taxpayer's representative is statutorily defined as "taxpayer return information." 26 U.S.C. § 6103(b)(3). This definition is a narrower form of "return information" that signifies who furnished the information to the IRS. *Compare* 26 U.S.C. § 6103(b)(2)(A) (defining broadly what type of information is "return information") *with* 26 U.S.C. § 6103(b)(3) (defining "taxpayer return information" as "return information" that was received by the taxpayer or the taxpayer's representative). Here, it is a distinction without a difference because whether the information Argyle seeks in this case is submitted by the taxpayer or the RAL on behalf of the taxpayer, it is within the broader category of "return information."

D.     *Return information is not reasonably segregable.*

Argyle argues that even if Form 8655 could be construed as "return information" the IRS failed to reasonably segregate and release nonexempt information. Dkt. No. 17 at pp. 15-17. Argyle calls an RA just a "mail carrier" whose identifying information must be disclosed. *Id*. Argyle is wrong. The RA is the authorized agent of a taxpayer whose existence and identifying information the IRS received as data related to returns or payment of taxes on behalf of a taxpayer. *See* discussion in Sections II, A and C, *supra*.

Once a record or information is "return information" it does not lose its character by mere redaction of identifying information – it retains its status as return information even if the identifiers are deleted. *See Church of Scientology*, 484 U.S. at 15 ("[T]he mere removal of identifying details" does not alter the confidentiality of documents that constitute "return information."). Nor does the information lose its character as "return information" by simply transferring the information from one document (Forms 8655) to another (reports generated by the RAF database from information received on Forms 8655). *Id.* Only item 1 of the Argyle's FOIA request seeks Forms 8655. The Service released in full records responsive to item 3 of Argyle's request and Argyle did not challenge the adequacy of the search related to that item. The remaining items of the FOIA request (items number 2, and 4-9) the IRS seeks to protect under section 6103 consists of the RALs or reports generated from an IRS database with information derived from the Form 8655. Dkt. No. 16-1 ¶ 40. These reports are so intermingled with return information that they cannot be reasonably segregated. *Id*. ¶ 41. The IRS has demonstrated that these items are "return information" as defined by section 6103. The Court should grant summary judgment for the IRS.

III.  **Records disclosing RAs' information and the information related to the taxpayers' on whose behalf they are authorized to act is protected under FOIA exemption 6 because disclosure would result in an unwarranted invasion of personal information the exemption protects.**

Because the IRS has already demonstrated that the records it is withholding are exempt under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103(a), the Court need not address whether the records are also exempt under FOIA exemption 6. *See Landmark*, 267 F.3d at 1134 (declining to determine whether FOIA exemption 6 applies because the records were properly withheld under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103(a)).  Should the Court address FOIA exemption 6, the IRS is properly withholding records under FOIA exemption 6 too. The records contain sensitive private information (names, addresses, identifying numbers, phone numbers, etc.) about individuals other than the Plaintiff, including personal information of the RA and of other third parties which would constitute an unwarranted invasion of personal privacy. Dkt. No. 16-2 at pp. 11-12. Argyle, without support, asserts that the invasion of privacy is "de minimus" because the information at issue did not have to be provided to the IRS. Dkt. No. 17 at p. 18. Argyle is asking the Court to hold that sensitive identifying information voluntarily submitted to the IRS that is meant to ease a taxpayer's filing and payment requirement is not entitled to privacy. The Court should reject Argyle's request, unsupported by any law, to invade the privacy of millions of American taxpayers.

**CONCLUSION**

For these reasons, the Service respectfully requests that the Court grant summary judgment

in its favor.


Dated: August 10, 2021          Respectfully Submitted:

                                DAVID A. HUBBERT
                                ACTING ASSISTANT ATTORNEY GENERAL

                                */s/ Stephanie A. Sasarak*
                                STEPHANIE A. SASARAK
                                ALEXANDER R. KALYNIUK
                                Trial Attorneys
                                United States Department of Justice
                                P.O. Box 227
                                Ben Franklin Station
                                Washington, D.C. 20044
                                (202) 616-3309 (p)
                                (202) 514-6866 (f)
                                Stephanie.A.Sasarak@usdoj.gov (e)
                                Alexander.R.Kalyniuk@usdoj.gov (e)
                                *Counsel to Defendant Internal Revenue Service*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2021, I electronically filed this brief with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel

for Plaintiff.


/s/ Stephanie A. Sasarak
STEPHANIE A. SASARAK
Trial Attorney
United States Department of Justice